# In the United States Court of Federal Claims

No. 16-1276L
(Filed: March 25, 2020)

|  |  |  |
|---|---|---|
| CITY OF FRESNO, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Keywords: Takings Clause; Fifth |
| | ) | Amendment; Breach of Contract; Water |
| v. | ) | Rights; Bureau of Reclamation; Motion to |
| | ) | Dismiss; Subject-Matter Jurisdiction; |
| THE UNITED STATES OF AMERICA, | ) | Failure to State a Claim |
| | ) | |
| Defendant, | ) | |
| and | ) | |
| | ) | |
| SAN LUIS & DELTA-MENDOTA WATER | ) | |
| AUTHORITY, *et al.*, and CENTRAL CALIFORNIA | ) | |
| IRRIGATION DISTRICT, *et al.* | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |
| | ) | |

*Nancie G. Marzulla* and *Roger J. Marzulla*, Marzulla Law, LLC, Washington, DC, for Plaintiffs. *Craig Parton* and *Timothy E. Metzinger*, Price, Postel & Parma LLP, Santa Barbara, CA, Of Counsel.

*Lucinda J. Bach*, Environment and Natural Resources Division, and *Geoffrey M. Long*, Civil Division, Commercial Litigation Branch, U.S. Department of Justice, Washington, DC, with whom was *Jean E. Williams*, Deputy Assistant Attorney General, Washington, DC, for Defendant. *Amy Aufdemberge*, Assistant Regional Solicitor, Office of the Solicitor, U.S. Department of Interior, Sacramento, CA, Of Counsel.

*Paul R. Minasian*, *Andrew J. McClure*, and *Jackson A. Minasian*, Minasian, Meith, Soares, Sexton & Cooper, LLP, Oroville, CA, for Defendant-Intervenor San Joaquin River Exchange Contractors Water Authority.
*Daniel J. O'Hanlon*, Kronick, Moskovitz, Tiedemann & Girard, Sacramento, CA, for Defendant-Intervenor San Luis & Delta-Mendota Water Authority.

*David T. Ralston*, Foley & Lardner LLP, Washington, DC, for Defendant-Intervenors Byron Bethany Irrigation District and Del Puerto Water District. *Frank S. Murray* and *Micah Zomer*, Foley & Lardner LLP, Washington, DC, Of Counsel.

*Jon D. Rubin*, General Counsel, Westlands Water District, Sacramento, CA, for Defendant-Intervenor Westlands Water District.

*Ellen L. Wehr*, Grassland Water District, Los Banos, CA, for Defendant-Intervenor Grassland Water District.

*Thomas M. Berliner*, Duane Morris LLP, San Francisco, CA, for Defendant-Intervenor San Luis Water District.

*Steven Stadler*, James Irrigation District, San Joaquin, CA, for Defendant-Intervenor James Irrigation District.

*Anthony T. Fulcher*, Santa Clara Valley Water District, San Jose, CA, for Defendant-Intervenor Santa Clara Valley Water District. *Stanly Yamamoto*, Santa Clara Valley Water District, San Jose, CA, Of Counsel.

## OPINION AND ORDER

**KAPLAN, Judge.**

Plaintiffs in this action include the City of Fresno, California, seventeen irrigation districts in California that have entered contracts with the Bureau of Reclamation to receive water supplied by the Friant Division of the Central Valley Project ("CVP") (hereinafter the District Plaintiffs),[1] and eight individual landowners who rely upon water supplied to them by the irrigation districts for agricultural purposes (hereinafter the Individual Plaintiffs).[2] The Individual Plaintiffs purport to sue on behalf of themselves and similarly-situated property owners served by the CVP.

Plaintiffs allege that in 2014, in the wake of water shortages caused by a severe drought, Reclamation provided the City and the District Plaintiffs with only a fraction of the water to which they claim entitlement under their contracts. According to Plaintiffs, Reclamation instead "appropriated all of the water of the Friant Division of the [CVP] to satisfy what it determined to be a contractual requirement to provide this water as substitute water under a 1939 Contract . . . to a group of water users referred to as the Exchange Contractors." 2d Am. Compl. ¶ 32. As a result Plaintiffs allege, the City and the District Plaintiffs, as well as their water users, including the Individual Plaintiff landowners, "suffered huge losses of annual and permanent crops, loss of

---

[1] The "District Plaintiffs" are: Arvin-Edison Water Storage District, Chowchilla Water District, Delano-Earlimart Irrigation District, Exeter Irrigation District, Ivanhoe Irrigation District, Lindmore Irrigation District, Lindsay-Strathmore Irrigation District, Lower Tule River Irrigation District, Orange Cove Irrigation District, Porterville Irrigation District, Saucelito Irrigation District, Shafter-Wasco Irrigation District, Southern-San Joaquin Municipal Utility District, Stone Corral Irrigation District, Tea Pot Dome Water District, Terra Bella Irrigation District, and Tulare Irrigation District. 2d Am. Compl. For Taking of Water Rights Without Just Compensation & for Breach of Contract ("2d Am. Compl.") ¶¶ 4–18, ECF No. 128-1.

[2] The "Individual Plaintiffs" are: Loren Booth LLC, Matthew J. Fisher, Julia K. Fisher, Hronis Inc., Clifford R. Loeffler, Maureen Loeffler, Douglas Phillips, and Caralee Phillips. 2d Am. Compl. ¶¶ 21–25.

groundwater reserves, water shortages and rationing, and incurred millions of dollars to purchase emergency water supplies." Id. ¶ 33.

Plaintiffs contend that Reclamation breached its contract with the City and the District Plaintiffs "by failing to make available to them the quantities required by Article 3 of their contracts." Id. ¶ 46. They also allege that "[t]he water and water rights of the Friant Division appropriated by the United States in 2014 were the property of Plaintiffs, and their landowners and water users, each of which are the beneficial owners of the water rights." Id. ¶ 34. According to Plaintiffs, when Reclamation provided the water to the Exchange Contractors, rather than the City and the District Plaintiffs, it effected a taking of their property without just compensation, in violation of the Fifth Amendment. Id. ¶ 35.

Presently before the Court are motions to dismiss filed by the United States and the Defendant Intervenors[3] pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"). The government contends that the City and District Plaintiffs lack standing to pursue Fifth Amendment takings claims because under California law they do not have property interests in the water supplied to them by Reclamation. According to the government, whatever rights the City and the District Plaintiffs possess arise exclusively under their water-supply contracts with Reclamation.

The United States further argues that the City and the District Plaintiffs have failed to state a claim for breach of the water-supply contracts because those contracts immunize the United States from any liability in cases of shortages caused by actions Reclamation took to meet its obligations under the exchange contracts. Further, the government contends that the Individual Plaintiffs also have no water rights under California law; nor are they third-party beneficiaries to the water-supply contracts between Reclamation and the City or Reclamation and the District Plaintiffs.[4]

The Intervenor Exchange Contractors make similar arguments, but offer additional grounds for dismissal. They contend that Plaintiffs' claims seek declaratory relief that is beyond the Court's power to grant. They also argue that Plaintiffs' Second Amended Complaint fails to allege that the United States' determination of the condition of shortage was arbitrary and capricious, as required by the shortage provisions in the water-supply contracts. For the reasons

---

[3] There are two sets of defendant intervenors: 1) San Luis & Delta-Mendota Water Authority along with its member districts—Westlands Water District, Santa Clara Valley Water District, Grassland Water District, San Luis Water District, James Irrigation District, Byron Bethany Irrigation District, and Del Puerto Water District—(collectively the District Intervenors); and 2) Central California Irrigation District, San Luis Canal Company, Firebaugh Canal Water District, Columbia Canal Company, the San Joaquin River Exchange Contractors Water Authority—(collectively the Exchange Contractor Intervenors).

[4] The District Intervenors make similar arguments in seeking to dismiss the Individual Plaintiffs' contract claims for lack of standing. They also argue that if the Court dismisses the City and District Plaintiffs' contract claims, then it should also dismiss the City and District Plaintiffs' takings claims.

3

set forth below, the motions to dismiss are **GRANTED-IN-PART** and **DENIED-IN-PART**. The City and the District Plaintiffs have adequately pleaded a breach of contract and, thus, the motions are **DENIED** as to those claims. The motions are **GRANTED** as to all remaining claims, including those presented by the Individual Plaintiffs as third-party beneficiaries of the water-supply contracts.

## BACKGROUND[5]

### I.     The Central Valley Project

"The Central Valley Project is the largest federal water management project in the United States." Stockton E. Water Dist. v. United States, 583 F.3d 1344, 1349 (Fed. Cir. 2009). It consists of a massive set of dams, reservoirs, hydropower generating stations, canals, electrical transmission lines, and other infrastructure. United States v. Gerlach Live Stock Co., 339 U.S. 725, 728 (1950). The CVP "was built to serve the water needs in California's Central Valley Basin," Stockton E. Water Dist., 583 F.3d at 1349, which has been characterized as "the most agriculturally-productive region in the world," Westlands Water Dist. v. United States (Westlands Water Dist. I), 153 F. Supp. 2d 1133, 1138 (E.D. Cal. 2001), aff'd, 337 F.3d 1092 (9th Cir. 2003). The CVP was originally conceived by the State of California, but "was taken over by the United States in 1935 and has since been a federal enterprise." Gerlach Live Stock Co., 339 U.S. at 728. It is operated by the Bureau of Reclamation, a division of the Department of the Interior. Stockton E. Water Dist., 583 F.3d at 1349.

The CVP's purposes were to "improv[e] navigation, regulat[e] the flow of the San Joaquin River and the Sacramento River . . . [to store and deliver] waters thereof, for the reclamation of arid and semiarid lands . . . and other beneficial uses." Westlands Water Dist. v. United States (Westlands Water Dist. II), 337 F.3d 1092, 1095 (9th Cir. 2003) (quoting Act of August 26, 1937, Pub. L. No. 75-392, 50 Stat. 844, 850). The CVP achieved these purposes by "re-engineer[ing] [the] natural water distribution" of California's Central Valley. Gerlach Live Stock Co., 339 U.S. at 728.

As the government observes, "[a]s originally conceived, the CVP developed a water supply from two rivers: the Sacramento and the San Joaquin." Corrected Resp. of the U.S. to Show Cause Order at 4, ECF No. 113. The Sacramento River generates a "surplus of water because of heavier rainfall in the northern region but has little available tillable soil." Westlands Water Dist. I, 153 F. Supp. 2d at 1146 (quoting Cty. of San Joaquin v. State Water Res. Control Bd., 63 Cal. Rptr. 2d 277, 279 (Cal. Ct. App. 1997)) (alterations omitted). The San Joaquin River, by contrast, cannot supply sufficient water for irrigation and other beneficial uses in the San Joaquin Valley. Id.

---

[5] The facts in this section are drawn from the parties' pleadings and their filings on the motions to dismiss.

The claims before the Court in this case arise out of the Project's Friant Division, 2d Am. Compl. ¶ 29,[6] where the Friant Dam impounds all of the waters of the San Joaquin River and stores them in Millerton Lake. The waters stored in Millerton Lake are distributed via the Madera and Friant-Kern Canals to water and irrigation districts like the District Plaintiffs that hold contracts with Reclamation. See Dugan v. Rank, 372 U.S. 609, 613 (1963); Westlands Water Dist. II, 337 F.3d at 1096; United States v. State Water Res. Control Bd. ("SWRCB"), 227 Cal. Rptr. 161, 167 (Cal. Ct. App. 1986).

## II.  Reclamation's Water Rights

Congress passed the Reclamation Act of 1902 to facilitate federal management of limited water resources in the western states. See California v. United States, 438 U.S. 645, 649 (1978). Under the act, funds reserved from the sale of public lands in several western states, including California, are deposited into a "reclamation fund," controlled by the Treasury, which is used for "the construction and maintenance of irrigation works for the storage, diversion, and development of waters for . . . [these] arid and semiarid lands." Reclamation Act of 1902, Pub. L. 57-161, § 1, 32 Stat. 388 (1902).

To "facilitate water distribution" and "provide a reliable and stable water supply," the United States had to "obtain, by purchase or otherwise, rights (both appropriative and riparian) from water-rights holders in strategic areas." Westlands Water Dist. I, 153 F. Supp. 2d at 1143; see also Gerlach Live Stock Co., 339 U.S. at 734 (observing that "[b]y its command that the provisions of the reclamation law should govern the construction, operation, and maintenance of the several construction projects, Congress directed the Secretary of the Interior to proceed in conformity with state laws, giving full recognition to every right vested under those laws"). Reclamation used three methods to secure the water rights it needed to operate the CVP.

First, in 1939, Reclamation entered purchase agreements with downstream holders of riparian rights on the San Joaquin River (the Exchange Contractors). See 2d Am. Compl. Ex. 1, ECF No. 128-2 (Contract for Purchase of Miller and Lux Water Rights—hereinafter the "purchase contract"). Under these agreements, the Exchange Contractors "sold all of their San Joaquin River water rights to the United States, except for 'reserved water'" to which they held vested rights. Westland Water Dist. II, 337 F.3d at 1097.

Second, Reclamation and the Exchange Contractors entered "Contract[s] for the Exchange of Waters" under which Reclamation was given authority to exercise the contractors' remaining (reserved) rights to San Joaquin River waters in exchange for the agreement of the Bureau to provide them with "substitute water." Westlands Water Dist. v. Firebaugh Canal, 10 F.3d 667, 669 (9th Cir. 1993); see also 2d. Am. Compl. Ex. 2 (Contract for Exchange of Waters

---

[6] The Friant Division encompasses one of the nine distinct geographic areas, known as "divisions," that make up the CVP. Westlands Water Dist. I, 153 F. Supp. 2d at 1138 (E.D. Cal. 2001). It consists of the Friant Dam, Millerton Lake, the Friant-Kern Canal, the Madera Canal, and the John A. Franchi Diversion Dam. Id. at 1142.

(July 27, 1939)), ECF No. 128-3; id. Ex. 3 (Second Amended Contract for Exchange of Waters (February 14, 1968) —hereinafter the "exchange contract"), ECF No. 128-4. The exchange contracts further provided that Reclamation's rights to exercise the reserved rights of the Exchange Contractors were conditional. They would last "so long as, and only so long as, the United States does deliver to [the Exchange Contractors] by means of the [Central Valley] Project or otherwise substitute waters in conformity with this contract." Id. Ex. 3, at 8 (Article 4 of Second Amended Exchange Contract). [7]

Reclamation secured the remaining water rights it needed to operate the CVP from the California State Water Resources Control Board ("SWRCB"). See generally California v. United States, 438 U.S. 645 (1978). Specifically, on June 2, 1959, the SWRCB issued Decision No. D-935, which authorized and issued permits to allow Reclamation to impound and divert the entire flow of the San Joaquin River at Friant Dam, and to store and release the water for re-diversion into the Friant-Kern and Madera Canals. See Cal. SWRCB Decision No. D-935 (June 2, 1959), https://www.waterboards.ca.gov/waterrights/board_decisions/adopted_orders/decisions/d0900_d0949/wrd935.pdf.

In short, "[t]he United States . . . acquired, by exchange, purchase, exercise of eminent domain, and appropriation, riparian and appropriative rights to all water within the CVP." Westlands Water Dist. I, 153 F. Supp. 2d at 1144 (citing 43 U.S.C. § 511 (2001)). As a result, "[a]ccess to CVP water is only by contract with the United States." Id.

### III. The Water-Supply Contracts

Reclamation has entered water-supply contracts with the City and each of the District Plaintiffs. See, e.g., 2d Am. Compl. Ex. 5 (Arvin-Edison water-supply contract), ECF No. 128-6. The water-supply contracts provide at Article 3(a) that "[d]uring each year, consistent with all applicable State water rights, permits, and licenses, Federal law . . . and subject to the provisions set forth in Articles 12 and 13 of this Contract, the Contracting Officer shall make available for delivery" specified amounts of Class 1 and Class 2 water. Id. at 18.

Article 3(n) of the water-supply contracts makes the rights of the Districts "subject to the terms of [the exchange contracts]." Id. at 24. It states, however, that "[t]he United States agrees that it will not deliver to the Exchange Contractors thereunder the water of the San Joaquin River unless and until required by the terms of said contract." Id. Article 3(n) also states that the United States further agreed not to "voluntarily and knowingly determine itself unable to deliver to the Exchange Contractors entitled thereto from water that is available or that may become available to it from the Sacramento River and its tributaries or the Sacramento-San Joaquin Delta those quantities required to satisfy the obligations of the United States under" the exchange and purchase contracts. Id.

---

[7] Citations to the exhibits appended to the second amended complaint refer to the pagination assigned by the court's electronic filing system.

Article 12 of the water-supply contracts provides in pertinent part that Reclamation will "make all reasonable efforts to optimize delivery of the Contract Total subject to . . . [inter alia] the obligations of the United States under existing contracts, or renewals thereof, providing for water deliveries from the Project." Id. at 123. In Article 13, Reclamation agrees that "the Contracting Officer will use all reasonable means to guard against a Condition of Shortage." Id. at 124. Article 13(b) further provides that "[i]f there is a Condition of Shortage because of . . . actions taken by the Contracting Officer to meet legal obligations . . . then, except as provided in subdivision (a) of Article 19 of this Contract, no liability shall accrue against the United States . . . for any damage, direct or indirect, arising therefrom." Id. at 125. Article 19(a) provides, in turn, that "[w]here the terms of this Contract provide for actions to be based upon the opinion or determination of either party to this Contract, said terms shall not be construed as permitting such action to be predicated upon arbitrary, capricious, or unreasonable opinions or determinations." Id. at 131–32.

## IV.   Plaintiffs' Legal Claims in this Case Regarding Water Year 2014

### A.   Breach of Water-Supply Contracts

In 2014, California was in the second year of a multi-year severe drought. See Friant Water Auth. v. Jewell, 23 F. Supp. 3d 1130, 1140 (E.D. Cal. 2014). Plaintiffs allege that in that year, "the United States breached Plaintiffs' water-supply contracts by failing to make available to them the quantities required by Article 3 of their contracts." 2d Am. Compl. ¶ 46. They assert that during that year "there was a substantial quantity of San Joaquin River water available to the United States, stored and otherwise existing within the Friant Division, even though precipitation had been low during the winter." Id. According to Plaintiffs, "in breach of their permanent contracts, the United States failed and refused to make that water available to Plaintiffs (with the minor exception of small quantities of 'health and safety' and 'carry over water'), determining instead to release and deliver that water to the Exchange Contractors." Id. They seek an award of damages to compensate them for "the cost of purchasing replacement water for the quantities not made available by Reclamation, management and operations costs for 2014 (including the cost of delivering the water to the Exchange Contractors)," and other related costs "plus other damages as yet unascertained." Id. ¶ 50.

### B.   Fifth Amendment Taking

In addition to their breach of contract claim, Plaintiffs assert that the actions Reclamation took in 2014 resulted in a taking of their property without just compensation, in violation of the Fifth Amendment. They allege that "[e]ach municipal, industrial, and agricultural water user within Fresno and Plaintiff water agencies holds a property right in the beneficial use of the water and water rights of the San Joaquin River" and that the United States acquired such rights "to benefit the landowners and water users within the Friant Division of the Central Valley Project." Id. ¶ 31. Therefore, they allege, the United States' decision in 2014 to "appropriat[e] all of the water of the Friant Division of the [CVP] to satisfy what it determined to be a contractual requirement to provide th[e] water as substitute water" under the exchange contracts, Id. ¶ 32, resulted in a Fifth Amendment taking of their property, id. ¶ 34. "As a direct and proximate result of the United States' failure to pay just compensation for the water and water rights of the Friant Division it appropriated in 2014," Plaintiffs contend, they "have been damaged equal to

the fair market value of the property appropriated, including compound interest from the date of taking, in an amount that will be proved at trial." Id. ¶ 36.

## V. Previous District Court Suit

In 2014, thirteen of the plaintiffs in this litigation filed suit in the United States District Court for the Eastern District of California. See Compl., Friant Water Auth. v. Jewell, 23 F. Supp. 3d 1130 (E.D. Cal. 2014) (No. 1:14-cv-765); 1st Am. Compl., Friant Water Auth. v. Jewell, 23 F. Supp. 3d 1130 (E.D. Cal. 2014) (No. 1:14-cv-765).[8] In that case (as relevant here), the plaintiffs also alleged that Reclamation's 2014 water allocation decisions breached their water-supply contracts and violated the Fifth Amendment's Takings Clause. Id. ¶¶ 99–112. In addition, they claimed that Reclamation's water allocation decisions violated the Administrative Procedure Act. Id. ¶ 98.

On December 1, 2014, the district court denied the plaintiffs' motion to transfer the case to the Court of Federal Claims. It reasoned that it possessed jurisdiction over the breach of contract claims "to the extent [plaintiffs] request equitable relief available under the APA." Friant Water Auth. v. Jewell, No. 1:14-cv-765, 2014 WL 6774019, at *12 (E.D. Cal. Dec. 1, 2014) (denying request to transfer but striking the request for damages). It declined to transfer the takings claim because it found that claim as presented to it "frivolous." It so found because the taking claim was "premised upon the underlying allegation that Reclamation failed to correctly implement provisions in the [Central Valley Project Improvement Act]," and, as the court noted, clear Federal Circuit precedent "bars takings claims premised upon the United States' violation of a statute." Id. (citing Lion Raisins Inc. v. United States, 416 F.3d 1356, 1370 (Fed. Cir. 2005)) (noting also that, "in a takings case, [the court] assume[s] that the underlying governmental action was lawful"). Thus, the district concluded that transferring the case to the Court of Federal Claims would "not be in the interests of justice." Id.

On December 18, 2014, plaintiffs voluntarily dismissed their claims in the district court pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure. Notice of Voluntary Dismissal, Friant Water Auth., No. 1:14-cv-765 (E.D. Cal. Dec. 18, 2014); see also Mem. Dec. & Order Re Pls.' Mot. to Transfer to Ct. of Federal Claims, Friant Water Auth., No. 1:14-cv-765 (E.D. Cal. Jan. 5, 2015) (ordering that "all remaining claims against all remaining parties [be] dismissed without prejudice" and that the case be closed).

## VI. The Present Suit

Plaintiffs filed the present action on October 5, 2016. The case was assigned to then-Judge (now Senior Judge) Mary Ellen Coster Williams. The original complaint was brought only

---

[8] Plaintiffs that also participated in the earlier district court case are Arvin-Edison Water Storage District, Delano-Earlimart Irrigation District, Lindmore Irrigation District, Lindsay-Strathmore Irrigation District, Lower Tule River Irrigation District, Orange Cove Irrigation District, Porterville Irrigation District, Saucelito Irrigation District, Shafter-Wasco Irrigation District, Stone Corral Irrigation District, Tea Pot Dome Water District, Terra Bella Irrigation District, and Tulare Irrigation District.

8

by the City and the District Plaintiffs and it alleged a Fifth Amendment taking as the only cause of action. ECF No. 1. The government moved to dismiss the complaint pursuant to RCFC 12(b)(1) and (6). It contended that the plaintiffs lacked standing to pursue a Fifth Amendment Takings claim because they lacked the requisite property interest in the water they contended the government had appropriated, and because they failed to otherwise adequately plead a takings claim. ECF No. 7.

Several months later, the District Intervenors and the Exchange Contractor Intervenors sought to intervene in the case on the side of the government. ECF Nos. 10, 25. Plaintiffs objected to the motions to intervene. ECF No. 40. The Court initially deferred a ruling on the motions to intervene pending its decision on the government's first motion to dismiss, see ECF No. 52, but subsequently granted the motion during a hearing held on November 6, 2018, Tr. of Show Cause Hr'g Held on Nov. 6, 2018, at 105:21–23, ECF No. 123.

The Court held oral argument on the government's first motion to dismiss on December 11, 2017. During that hearing the Court stated its intent to "defer ruling on the standing issue" and to deny the 12(b)(6) motion for the purpose of allowing further development of the record. Tr. of Oral Arg. Held on Dec. 11, 2017 at 110:17–20, ECF No. 58; see also Order at 1, ECF No. 56 (memorializing the ruling announced during oral argument).

On January 30, 2018, Plaintiffs filed an amended complaint with leave of the court, ECF No. 65, to which the government filed an answer on February 26, 2018, ECF No. 66. On May 31, 2018, the Court issued a show cause order directing Plaintiffs to demonstrate: 1) "[w]hy the water rights at issue are not exclusively derived from contract as a matter of law"; and 2) "[w]hat, if any, property rights exist independently of contractual rights." Order, ECF No. 76. After receiving responses from the parties, the Court held a show cause hearing on November 6, 2018 during which it directed the parties to submit a proposal for further proceedings in the case. Tr. of Show Cause Hr'g Held on Nov. 6, 2018, at 105:24–106:15.

After receiving a proposal from all parties (who could not agree on a path forward), the Court granted the government's request to stay discovery and issued a scheduling order to govern future proceedings. ECF No. 124. In accordance with the Court's order, Plaintiffs filed a second amended complaint on December 18, 2018, in which they added a claim for breach of contract. See 2d Am. Compl. ¶¶ 38–50.

The government and Defendant-Intervenors filed the motions to dismiss presently before the Court on May 15, 2019. The motions were fully briefed as of July 1, 2019. ECF Nos. 144–146. Oral argument was initially scheduled for November 18, 2019, but was rescheduled at the request of the government until January 9, 2020. ECF No. 154.

When the parties convened for oral argument, Senior Judge Coster Williams announced her recusal on the basis of a recently developed conflict. See ECF Nos. 157, 160. The case was transferred to the undersigned on January 22, 2020. ECF No. 158. A status conference was held on February 3, 2020, ECF No. 161. An oral argument on the pending motions was scheduled, ECF No. 162, and held on March 5, 2020.

## DISCUSSION

### I.  Contract Claims

#### A.  Motions to Dismiss for Lack of Subject-Matter Jurisdiction

As noted, Plaintiffs allege that in 2014 the government breached the water-supply contracts by not making available to the City and the District Plaintiffs the quantities of water required under Article 3(a). The Intervenor Exchange Contractors have moved to dismiss Plaintiffs' contract claims under RCFC 12(b)(1) on the theory that Plaintiffs seek declaratory relief that lies beyond the Court's jurisdiction. Mem. of Points & Auths. in Support of Def.-Intervenor San Joaquin River Exchange Contractors Water Auths.' Mot. to Dismiss ("Intervenor Exchange Contractors' Mem."), ECF No. 137-1. The District Intervenors have moved to dismiss the claims of the Individual Plaintiffs for lack of jurisdiction for another reason—they argue that the Individual Plaintiffs are not in privity of contract with the government and are not third-party beneficiaries to any contract. See Mot. to Dismiss & Mem. in Support of Mot. By San Luis & Delta-Mendota Water Auth. et al. ("District Intervenor's Mem.") at 1–2, ECF No. 138.

For the reasons set forth below, the Court concludes that the jurisdictional objection posed by the Intervenor Exchange Contractors lacks merit. On the other hand, and also for reasons set forth below, the Court finds persuasive the arguments of the government and the District Intervenors that the Individual Plaintiffs lack standing to pursue their breach of contract claims because they are not third-party beneficiaries of the water-supply contracts.

##### 1.  The Motion of the Intervenor Exchange Contractors

When ruling on a motion to dismiss for lack of subject-matter jurisdiction, the Court "consider[s] the facts alleged in the complaint to be true and correct." Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). "If a motion to dismiss for lack of subject-matter jurisdiction, however, challenges the truth of the jurisdictional facts alleged in the complaint, the [court] may consider relevant evidence in order to resolve the factual dispute." Id.

Under the Tucker Act, 28 U.S.C. § 1491(a)(1), this Court has jurisdiction "to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." Plaintiffs' claims seeking damages for the alleged breach of the water-supply contracts, fall squarely within this grant of jurisdiction. Nonetheless, the Intervenor Exchange Contractors contend that this Court lacks jurisdiction to decide those claims because doing so would require the Court to issue a declaratory judgment regarding the appropriate interpretation of the exchange contracts, and the scope of the Exchange Contractors' rights under those agreements. Intervenor Exchange Contractors' Mem. at 16–22. As the Intervenor Exchange Contractors point out, this Court lacks general jurisdiction to issue declaratory judgments. See Nat'l Air Traffic Controllers Ass'n v. United States, 160 F.3d 714, 716–17 (Fed. Cir. 1998).

The Intervenor Exchange Contractors' contentions lack merit. Plaintiffs do not request a declaratory judgment regarding the proper interpretation of the exchange contracts. They seek an

award of damages for breach of the water-supply contracts, to which the City and the District Plaintiffs are parties. The fact that the Court may be required to interpret the exchange contracts in the course of adjudicating Plaintiffs' claims that the water-supply contracts have been breached, does not change the fundamental character of this action. The Intervenor Exchange Contractors' motion to dismiss under RCFC 12(b)(1) is therefore denied.

### 2.  The Motions of the Government and the District Intervenors

As noted, the District Intervenors have also filed a motion to dismiss under RCFC 12(b)(1). They contend that the breach of contract claims brought by the Individual Plaintiffs must be dismissed because the Individual Plaintiffs are not parties to any contract with the government and are not third-party beneficiaries of any such agreement. The government makes the same argument in seeking to dismiss the claims of the Individual Plaintiffs pursuant to RCFC 12(b)(6) for failure to state a claim. See Def.'s Mot. at 32–35. The Court agrees that the Individual Plaintiffs lack standing to pursue breach of contract claims and therefore dismisses those claims for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1).

"A plaintiff must be in privity with the United States to have standing to sue the sovereign on a contract claim." Sullivan v. United States, 625 F.3d 1378, 1379–80 (Fed. Cir. 2010) (citing Anderson v. United States, 344 F.3d 1343, 1351 (Fed. Cir. 2003)). This requirement notwithstanding, the Federal Circuit has recognized "limited exceptions to that general rule when a party standing outside of privity 'stands in the shoes of a party within privity.'" Id. at 1380 (quoting First Hartford Corp. Pension Plan & Trust v. United States, 194 F.3d 1279, 1289 (Fed. Cir. 1999)). "A nonparty becomes legally entitled to a benefit promised in a contract . . . only if the contracting parties so intend." G4S Tech. LLC v. United States, 779 F.3d 1337, 1340 (Fed. Cir. 2015) (quoting Astra USA, Inc. v. Santa Clara Cty., 563 U.S. 110, 117 (2011). Such intent may be either express or implied. Id. (citing Glass v. United States, 258 F.3d 1349, 1354 (Fed. Cir. 2001)). In order to confer third-party beneficiary status, the benefit to the third party must be "direct." Id.; see also Pac. Gas & Elec. Co. v. United States, 838 F.3d 1341, 1361 (Fed. Cir. 2016) (quoting Flexfab, L.L.C. v. United States, 424 F.3d 1254, 1259 (Fed. Cir. 2005)) ("To demonstrate third-party beneficiary status [] a party must prove that 'the contract not only reflects the express or implied intention to benefit the party, but that it reflects an intention to benefit the party directly.'").

It is undisputed that the Individual Plaintiffs are not parties to any agreement with Reclamation. While the Individual Plaintiffs certainly benefit from the water-supply contracts between Reclamation and the District Plaintiffs, "[t]hird-party beneficiary status is not established 'merely because [a] contract would benefit [a party].'" Pac. Gas & Elec. Co. v. United States, 838 F.3d at 1361 (quoting Fed. Deposit Ins. Corp. v. United States, 342 F.3d 1313, 1319 (Fed. Cir. 2003)); see also Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1211 (9th Cir. 1999), opinion amended on denial of reh'g, 203 F.3d 1175 (9th Cir. 2000) (citing Restatement (Second) of Contracts § 313 (Am. Law Inst. 1981)) ("Parties that benefit from a government contract are generally assumed to be incidental beneficiaries, and may not enforce the contract absent a clear intent to the contrary."); Restatement (Second) of Contracts § 313 cmt. a ("Government contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested.").

11

Plaintiffs identify no language in the water-supply contracts that evinces—either expressly or implicitly—an intent to confer third-party beneficiary status on the Individual Plaintiffs, much less a clear one. Here, as in Klamath Water Users, "[a]lthough the Contract operates to the Irrigators' benefit by impounding irrigation water, and was undoubtedly entered into with the Irrigators in mind, to allow them intended third-party beneficiary status would open the door to all users . . . achieving similar status, a result not intended by the Contract." 204 F.3d at 1212; see also Smith v. Cent. Ariz. Water Conserv. Dist., 418 F.3d 1028, 1034 (9th Cir. 2005) (finding that landowners were not third-party beneficiaries to a reclamation contract); Orff v. United States, 358 F.3d 1137, 1144 (9th Cir. 2004), aff'd on other grounds, 545 U.S. 596 (2005) (same).

Further, as the court of appeals has observed, "[f]or determination of contractual and beneficial intent when . . . the contract implements a statutory enactment, it is appropriate to inquire into the governing statute and its purpose." Roedler v. Dep't of Energy, 255 F.3d 1347, 1352 (Fed Cir. 2001). Here, "the governing statute restricts Reclamation's contracting authority to extend only to irrigation districts and other such entities organized under state law, not individual water users." Stockton E. Water Dist. v. United States, 75 Fed. Cl. 321, 350, modified in part, 76 Fed. Cl. 470 (2007) (citing 43 U.S.C. § 423e and also observing that "th[e] governing statutes further support defendant's argument that the [cities that secure water from the water districts] should not be granted third-party beneficiary status, as the intent of Congress would appear to limit the power of Reclamation to enter into contracts with such entities").

Further, in this case, as in Pacific Gas and Electric Co., "there is no identifiable benefit flowing from [Reclamation] to the particular [plaintiffs]." 838 F.3d at 1362. The contract between Reclamation and the Districts was not "intended to benefit them specifically, independent of all other market participants." Id.

The Individual Plaintiffs' reliance on H.F. Allen Orchards v. United States, 749 F.2d 1571 (Fed. Cir. 1984) for a contrary proposition is unavailing. In that case, the appellants were members of the Yakima Project Irrigation District. Id. at 1573. They alleged that Reclamation breached an obligation to accurately forecast the amount of water it intended to supply to irrigation districts, which they claimed was imposed by contracts between Reclamation and the districts that were incorporated into a consent decree. The court of appeals affirmed the Claims Court's determination that Reclamation did not undertake such an obligation, but disagreed with its conclusion that the appellants could not sue as third-party beneficiaries to the district-Bureau contracts. Id. at 1572–73. It found the landowners entitled to assert third-party beneficiary status because, among other reasons, it was undisputed that they had a property right to the water under Fox v. Ickes, 137 F.2d 30 (D.C. Cir. 1943), so that "the Bureau was obligated to distribute the available water according to priorities established under State of Washington law." Id. at 1575.

The court of appeals' observations regarding the appellants' third-party beneficiary status was arguably dicta. But in any event, the would-be third-party beneficiaries in H.F. Allen Orchards had property interests in the water itself. Thus, as the court of appeals observed in Pacific Gas and Electric Co., in H.F. Allen Orchards "a specific identifiable benefit flowed from the government to each farmer under the consent decree." Pacific Gas & Electric Co., 838 F.3d at 1362. For the reasons set forth below, the Individual Plaintiffs here do not have property

interests in the water that is the subject of the contracts between Reclamation and the District Plaintiffs or Reclamation and the City. H.F. Allen Orchards is therefore inapposite.

In short, third-party beneficiary status imparts an "exceptional privilege," which is why the court of appeals has "cautioned that the privilege of third-party beneficiary status 'should not be granted liberally.'" G4S Tech. LLC, 779 F.3d at 1340 (quoting Flexfab, L.L.C., 424 F.3d at 1259). The Court agrees with the government and District Intervenors that there is nothing in the water-supply contracts that vests the Individual Plaintiffs with the right to assert that exceptional privilege here. Their breach of contract claims must accordingly be dismissed based on lack of standing.

### B. Motion to Dismiss for Failure to State a Claim

The government and the Exchange Contractor Intervenors have each filed motions to dismiss the remaining breach of contract claims (brought by the City and the District Plaintiffs) under RCFC 12(b)(6). For the reasons that follow, the Court concludes that those motions lack merit.

#### 1. Standards for Motion to Dismiss Under RCFC 12(b)(6)

A complaint may be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002). When considering a motion to dismiss for failure to state a claim upon which relief may be granted, the Court "must accept as true all the factual allegations in the complaint, and must indulge all reasonable inferences in favor of the non-movant." Sommers Oil Co. v. United States, 241 F.3d 1375, 1378 (Fed. Cir. 2001) (citations omitted). The Court, however, is not required to "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

"To avoid dismissal" under RCFC 12(b)(6) "a party need only plead 'facts to state a claim to relief that is plausible on its face,' with facts sufficient to nudge 'claims across the line from conceivable to plausible.'" TrinCo Inv. Co. v. United States, 722 F.3d 1375, 1380 (Fed. Cir. 2013) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim is plausible on its face when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662 (2009)).

#### 2. Contract Claims of the City and the District Plaintiffs

As noted, Plaintiffs allege that in 2014 the government breached the water-supply contracts by not making available to them the quantities of water specified in Article 3(a) of those contracts. They assert that—notwithstanding the drought—the federal government had a substantial quantity of San Joaquin River water available, stored, and otherwise existing in the Friant Division. 2d Am. Compl. ¶ 46. But instead of fulfilling its obligations to make that water available to Plaintiffs, they allege, Reclamation released and delivered the water to the Exchange Contractors. Id.

The government contends that the complaint nonetheless fails to state a claim for breach of contract because, in its view, Plaintiffs' allegations do not take sufficient account of Article 13(b) of the water delivery contracts, which the government contends "immunize[s] [it] from liability for conditions of shortage caused by efforts to meet legal obligations." Def.'s Mot. to Dismiss the 2d Am. Compl. ("Def.'s Mot.") at 28, ECF No. 136. In addition, the government contends that Plaintiffs have failed to put forth facts sufficient to support their breach claim. Id. at 29–30. The Intervenor Exchange Contractors further argue that Plaintiffs' complaint fails to state a claim because it does not allege that it was arbitrary and capricious for the agency to determine that its obligations under the exchange contracts precluded it from meeting its obligations under the water-supply contracts, as allegedly required to establish a breach of the latter. The Court finds these arguments unpersuasive.

Article 13 of the water-supply contracts is entitled "Constraints on the Availability of Water." Subsection (b) provides that "[i]f there is a Condition of Shortage because of . . . actions taken by the Contracting Officer to meet legal obligations . . . then, except as provided in subdivision (a) of Article 19 of this Contract, no liability shall accrue against the United States . . . for any damage, direct or indirect, arising therefrom." 2d Am. Compl. Ex. 5, at 125, ECF No. 128-6. Article 19(a) provides in turn that "[w]here the terms of this Contract provide for actions to be based upon the opinion or determination of either party to this Contract, said terms shall not be construed as permitting such action to be predicated upon arbitrary, capricious, or unreasonable opinions or determinations." Id. at 131–32.

For two independent reasons, the Court is not persuaded by the contentions of the government and the Exchange Contractor Intervenors that Plaintiffs have failed to state a claim for breach of contract because their complaint does not take sufficient account of the "immunity" provided to Reclamation under Article 13(b). For one thing, the court of appeals has characterized similar "immunity provisions" as establishing affirmative defenses for which the government bears the burden of proof. See Stockton E. Water Dist., 583 F.3d at 1360 (finding that the provision in a water-supply contract that permits the government to escape liability where the water shortage caused by drought or other reasons beyond the control of the contracting officer supplies an affirmative defense that must be proven by the government). Plaintiffs are not required to negate affirmative defenses in their complaints. ABB Turbo Sys. AG v. Turbousa, Inc., 774 F.3d 979, 985 (Fed. Cir. 2014) (citing La Grasta v. First Union Secs., Inc., 358 F.3d 840, 845–46 (11th Cir. 2004)).

Further, and in any event, the complaint does in fact take account of the provisions the government and the Intervenor Exchange Contractors cite, and contains sufficient factual allegations to survive a 12(b)(6) motion to dismiss. Thus, read together, Articles 13(b) and 19(a) shield the government from liability for failing to meet its obligations under Article 3 in cases where the contracting officer has reasonably determined that the water must instead be provided to the Exchange Contractors to meet Reclamation's obligations to them. While Plaintiffs do not use the words "arbitrary," "capricious," or "unreasonable," they do allege that "the San Joaquin River water that Reclamation released and delivered to the Exchange Contractors in 2014 was made at a time, in a manner, and in an amount substantially greater than what the Exchange

Contractors were entitled to under [Article 4 of] the Exchange contract." 2d Am. Compl. ¶ 48.[9] They further allege that the United States "fail[ed] and refus[ed] to make Friant Division water available to Plaintiffs, over and above the flows to which the Exchange Contractors were entitled under the terms of the Exchange Contract." Id. ¶ 49.

For purposes of ruling on a motion to dismiss under RCFC 12(b)(6), these allegations are sufficient to address the immunity provisions, including the "arbitrary and capricious" requirement. They also state claims for a breach of Article 3(n) of the water-supply contract, which provides that "[t]he United States agrees that it will not deliver to the Exchange Contractors thereunder the water of the San Joaquin River unless and until required by the terms of said contract." 2d Am. Compl. Ex. 5, at 24; see also id. at 48 (providing in pertinent part that Reclamation will "make all reasonable efforts to optimize delivery of the Contract Total subject to . . . [inter alia] the obligations of the United States under existing contracts, or renewals thereof, providing for water deliveries from the Project").

In short, Plaintiffs have set forth sufficient facts to defeat the government's motion to dismiss. While the allegations contain less specificity than the government would like, much of the detail the government would require Plaintiffs to supply is in the exclusive possession of the government and the Exchange Contractors. Therefore, the motions of the government and the Exchange Contractor Intervenors to dismiss the City and the District Plaintiffs' breach of contract claims under RCFC 12(b)(6) must be denied.

**II.     Takings Claims**

The City, the District Plaintiffs, and the Individual Plaintiffs allege that they each "hold[] a property right in the beneficial use of the water and water rights of the San Joaquin River which the United States acquired to benefit the landowners and water users within the Friant Division of the Central Valley Project." 2d Am. Compl. ¶ 31. When Reclamation decided to use the water of the Friant Division of the Central Valley Project to provide "substitute water" to the Exchange Contractors, Plaintiffs contend, it appropriated Plaintiffs' water rights thereby effecting a Fifth Amendment taking of their property for which they are owed just compensation. Id. ¶¶ 32, 34.

The government and the Intervenor Exchange Contractors have moved to dismiss all of Plaintiffs' takings claims for lack of standing under RCFC 12(b)(1). They contend that none of the Plaintiffs possess extra-contractual water rights under state law based merely on their application of CVP water to beneficial purposes. The District Intervenors point to certain provisions of the California Water Code as an additional ground to dismiss the takings claims of the Individual Plaintiffs.

---

[9] Article 4 of the exchange contracts applies "[w]henever the United States is temporarily unable for any reason or any cause to deliver to the [Exchange Contractors] substitute water from the Delta-Mendota Canal." 2d Am. Compl. Ex. 3, at 8. It specifies the quantities and rates of San Joaquin River water that Reclamation is required to supply to the Exchange Contractors.

For the reasons set forth below, the Court concludes that—as a matter of law—none of the Plaintiffs possesses a property interest in the water supplied to them by or through Reclamation. Their takings claims must therefore be dismissed for lack of standing.

The Fifth Amendment to the United States Constitution provides that "private property" shall not be "taken for public use, without just compensation." U.S. Const. amend. V. To establish entitlement to compensation under the Takings Clause, a plaintiff must show: 1) that he has "a property interest for purposes of the Fifth Amendment," Members of the Peanut Quota Holders Ass'n v. United States, 421 F.3d 1323, 1330 (Fed. Cir. 2005) (citing Conti v. United States, 291 F.3d 1334, 1339 (Fed. Cir. 2002)), and 2) that the government's actions "amounted to a compensable taking of that property interest." Am. Pelagic Fishing Co. v. United States, 379 F.3d 1363, 1372 (Fed. Cir. 2004).

The Federal Circuit has recognized that the government's physical appropriation of water to which a plaintiff has valid rights under state law may constitute a physical taking under the Fifth Amendment. See, e.g., Casitas Mun. Water Dist. v. United States, 543 F.3d 1276, 1296 (Fed. Cir. 2008) (determining that a physical takings analysis was appropriate where the government "directly appropriate[s] . . . water for its own use—for the preservation of an endangered species"); Washoe Cty., Nev. v. United States, 319 F.3d 1320, 1326 (Fed. Cir. 2003) ("In the context of water rights, courts have recognized a physical taking where the government has physically diverted water for its own consumptive use or decreased the amount of water accessible by the owner of the water rights."). In such cases, state law "define[s] the dimensions of the requisite property rights for purposes of establishing a cognizable taking." Klamath Irr. Dist. v. United States, 635 F.3d 505, 511 (Fed. Cir. 2011).

California law recognizes both riparian and appropriative water rights. Riparian rights "are those that a person whose land is bounded or traversed by a natural stream has to the use of the stream or water." Westlands Water Dist. I, 153 F. Supp. 2d at 1142 n.10 (citing 62 Cal. Jur. 3d., Water § 65 at 101 (1981 & 2000 Supp.)). Plaintiffs do not contend that they possess riparian rights to the water provided to them by Reclamation.

An appropriative right "confers upon one who actually diverts and uses water the right to do so provided that water is used for reasonable and beneficial uses and is surplus to that used by riparians or earlier appropriators." SWRCB, 227 Cal. Rptr. at 168. As of 1914, the only way to acquire appropriative rights to water in California has been by invoking the administrative scheme established under California law. People v. Shirokow, 605 P.2d 859, 864 (Cal. 1980); SWRCB, 227 Cal. Rptr. at 168; see also Cal. Water Code §§ 1201, et. seq. Under that scheme, "an application for appropriative rights must now be made to the [SWRCB] for a permit authorizing construction of necessary water works and the taking and use of a specified quantity of water." SWRCB, 227 Cal. Rptr. at 168–69. If an appropriative water right is recognized, the permit holder may take and use the water subject to the terms of the permit. Id.

Plaintiffs, of course, have not sought or received permits to use the water to which they claim a right in their complaint. To the contrary, Reclamation is the owner of permits that allow it to draw upon the waters of the San Joaquin, subject to the vested priority rights of the Exchange Contractors. Plaintiffs argue, however, that Reclamation has only "nominal" title to the water, and that the water rights actually belong to the City and the District Plaintiffs, as well

16

as their customers, the Individual Plaintiffs, by virtue of their application of the project water to beneficial use. Pls.' Consolidated Resp. to Mot. to Dismiss ("Pls.' Resp.") at 44, ECF No. 141.

Plaintiffs find support for this theory in language contained in SWRCB Decision No. D-935, which granted Reclamation its permits to draw water from the San Joaquin River for CVP purposes. In fact, they contend that, under that decision, "[t]he City, the Districts, and the individual Plaintiffs within their District boundaries hold state-granted water rights in the beneficial use of Friant Division water." Id. at 7. They rely upon language in the decision stating that "the United States holds all water rights acquired for project purposes in trust for project beneficiaries who by use of the water on the land will become the true owners of the perpetual rights to continue such use, subject to noted exceptions." Id. at 8 (citing Cal. SWRCB Decision No. D-935 at 99). Further, Plaintiffs cite the board's statement that "[t]he right to the beneficial use of water for irrigation purposes, except where water is distributed to the general public by a private agency in charge of a public use, shall be appurtenant to the land on which said water shall be applied, subject to continued beneficial use." Id. at 50 (citing Cal. SWRCB Permit 11886 at 14–15 (June 2, 1959)).

While the Court agrees that this language is supportive of Plaintiffs' arguments, their reliance upon it is misplaced. Fourteen years ago, in SWRCB Decision D-1641 (March 15, 2000), aff'd, State Water Res. Control Bd. Cases, 39 Cal. Rptr. 3d 189 (Cal. Ct. App. 2006), the SWRCB rejected the theory that the United States is merely a trustee of the water rights it secured for project purposes, while the plaintiff in that proceeding (the Westlands Water District) as well as other consumers of the water were the true owners of those rights. It confirmed that "[t]itle to the water rights under the permits is held by [Reclamation]." Cal. SWRCB Decision No. D-1641 at 127 (Mar. 15, 2000), https://www.waterboards.ca.gov/waterrights/board_decisions/adopted_orders/decisions/d1600_d1649/wrd1641_1999dec29.pdf). Further, it explained that "even if water use is appurtenant to the enjoyment of a particular property, that does not mean that the owner of the property is the water right holder." Id. at 128. "[T]he permit language," the SWRCB observed, "does not dictate the quantity of water to be delivered to any end user." Id. "In effect," the Board found, "making the water right appurtenant to the land insofar as it is used for irrigation is a designation of a place of use of the water." Id.[10]

Further, as the SWRCB observed in No. D-1641, Plaintiffs' claimed ownership of water rights from use of irrigation water is not supported by federal law. Id. at 129 (citing Israel v. Morton, 549 F.2d 128, 132 (9th Cir. 1977)). To the contrary, Plaintiffs' theory—that the beneficial use of CVP project water by water districts and irrigators creates a property interest that exists independently of their contracts—has been repeatedly rejected by state and federal

---

[10] Plaintiffs contend that in State Water Resources Control Board Cases, the California court of appeals reversed this aspect of D-1641. Pls.' Resp. at 51–52 (citing 39 Cal. Rptr. 3d 189, 293 (Cal. Ct. App. 2006)). But the passage of the court's decision that they cite in support of this contention does not appear to address in any way the Board's rejection of the argument that irrigation districts, and not Reclamation, are the owners of water rights that arise out of their beneficial use of project water.

courts. The courts have also rejected the argument that Reclamation lacks any substantial interest in CVP water because it does not itself apply that water to beneficial use.

Thus, the courts have explained that project water is of a different legal character from water that users draw directly from streams or rivers such as the San Joaquin. It is different because project water has been diverted from the River and then stored, rediverted, and delivered through federal Reclamation facilities. As the Ninth Circuit observed in Israel v. Morton, 549 F.2d at 132, "[p]roject water . . . would not exist but for the fact that it has been developed by the United States." For that reason, "[i]t is not there for the taking (by the landowner subject to state law), but for the giving by the United States." Id. Further, "[t]he terms upon which it can be put to use, and the manner in which rights to continued use can be acquired are for the United States to fix." Id. at 132–33; see also Del Puerto Water Dist. v. U.S. Bureau of Reclamation, 271 F. Supp. 2d 1224, 1250 (E.D. Cal. 2003) (same); San Luis Unit Food Producers v. United States, 772 F. Supp. 2d 1210, 1244 (E.D. Cal. 2011), aff'd, 709 F.3d 798 (9th Cir. 2013) ("[C]ontracts for federal water service from Irrigation Districts do not create continuing 'water rights' that are enforceable, except in strict compliance with identified contracts."); Cty. of San Joaquin v. State Water Res. Control Bd., 63 Cal. Rptr. 2d 277, 285 n.12 (Cal. Ct. App. 1997) (characterizing as "highly misleading" the appellants' arguments that Reclamation "'holds only legal title to the water' and 'has no substantial interest in the water'" ruling that it has "appropriative water rights in the Central Valley Project," that it "owns the CVP facilities, has operational control and responsibilities relating to flood control, water supply, power generation, and fish and wildlife mitigation," and that it "has substantial property rights in its water rights permits, whereby the Bureau diverts, transports, and stores water"); Ivanhoe Irr. Dist. v. All Parties and Persons, 350 P.2d 69, 75 (Cal. 1960) (recognizing that project water "belongs to or by appropriate action may be secured by the United States," and that "[i]n a very real sense it is or will become the property of the United States"); Westlands Water Dist. I, 153 F. Supp. 2d at 1149 (observing that "[t]he United States holds all water rights to CVP water" and that "[t]o access CVP water, water users such as [the plaintiff irrigation districts] must enter into water service contracts with the United States").

The cases upon which Plaintiffs rely to support their arguments are inapposite. A number of them involve takings claims in the context of a plaintiff's assertion of riparian rights. In Dugan v. Rank, 372 U.S. 609 (1963), for example, the taking was of plaintiff's right "to the continued flow in the San Joaquin [River] and to its use as it flows along the landowner's property." Id. at 625. In Gerlach Live Stock Co., 339 U.S. 725 (1950), the plaintiff also held riparian water rights that pre-dated the construction of the Friant Dam.

In other cases Plaintiffs cite, the landowners had appropriative rights secured by permits. In Ickes v. Fox, the landowners were required under their contracts with Reclamation to initiate the appropriation of water rights under Washington state law prior to the construction of the Yakima Project. 300 U.S. 82, 89–90 (1937). In Casitas Mun. Water District v. United States, 708 F.3d 1340, 1343 (Fed. Cir. 2013), the contract with the United States required the water district to secure appropriative rights by obtaining permits. Similarly, in H.F. Allen Orchards v. United States, it was undisputed that the plaintiff irrigators were the holders of the water rights and the focus of the court of appeals' decision was on their breach of contract claim. In none of these cases did the courts suggest that a plaintiff irrigation district or landowner could assert a property

right that arose exclusively out of their use of project water supplied through a contract with the federal government.

Plaintiffs' reliance on Nebraska v. Wyoming, 325 U.S. 589 (1945), and Nevada v. United States, 463 U.S. 110 (1983), is also unavailing. As the court explained in San Luis, 772 F. Supp. 2d at 1244, in both of those cases (as in Ickes) "the contracts between the United States and the landowners directly provided that the landowners either would take ownership of the water right itself, or at the very least would possess a contractual right to a fixed volume of water." Neither is true in this case. The Individual Plaintiffs are not parties to the contracts. And the contracts do not provide for the City or the District Plaintiffs to take any ownership of water rights; nor do they entitle them to a fixed volume of water. To the contrary, the contracts explicitly recognize that the contractual rights of the City and the District Plaintiffs are subordinate to the Exchange Contractors' vested water rights.

In short, none of these cases stands for the proposition that mere beneficial use of project water confers rights independent of those provided under contracts with Reclamation. Plaintiffs cannot assert property rights greater than those secured through their contracts, which give a priority to the Exchange Contractors. Indeed, as the district court observed in Westlands Water District I, "[t]he argument that a last-in-time taker of a benefit," like Plaintiffs, "can impair the rights of a first-in-time contributor who made the benefit possible," i.e., the Exchange Contractors, "defies logic and the fifty-year CVP history." 153 F. Supp. 2d at 1177.

The Court has carefully considered Plaintiffs' remaining arguments in support of their claimed water rights and finds them without merit. While the Court is not bound by the decisions of the Ninth Circuit or the district courts in California, it finds those decisions, but not Plaintiffs' efforts to distinguish them, persuasive. Therefore, it concludes that Plaintiffs have failed to establish their standing to pursue takings claims based on Reclamation's actions.[11]

## CONCLUSION

On the basis of the foregoing, the motions to dismiss of the government and the intervenors on its side are **GRANTED-IN-PART** and **DENIED-IN-PART**. The breach of contract claims of the Individual Plaintiffs (Loren Booth LLC, Matthew J. Fisher, Julia K. Fisher, Hronis Inc., Clifford R. Loeffler, Maureen Loeffler, Douglas Phillips, and Caralee Phillips) are **DISMISSED without prejudice** for lack of standing. The takings claims of all Plaintiffs are similarly **DISMISSED without prejudice** pursuant to RCFC 12(b)(1) for lack of standing.

The parties shall file a joint status report within thirty days, proposing a schedule for proceedings going forward, including discovery.

---

[11] Given the Court's determination that none of the Plaintiffs have established that they possess water rights under California law, the Court does not reach the issue of whether collateral estoppel applies to the takings claims brought by some of the District Plaintiffs. Nor does it address the arguments made by the District Intervenors concerning whether the takings claims of the Individual Plaintiffs are precluded by certain provisions of the California Water Code.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge